Shelby County Court v. Cumberland & Ohio Railroad Company.

———————•———————

CASE 41—MANDAMUS—SEPTEMBER 30.

# Shelby County Court v. Cumberland & Ohio Railroad Company.

<span style="float:right">8bu209<br>o116 120<br><br>8bu209<br>o116 120</span>

APPEAL FROM SHELBY CIRCUIT COURT.

1. CONDITIONS ANNEXED TO THE PROPOSITION TO SUBSCRIBE FOR FOUR HUNDRED THOUSAND DOLLARS STOCK IN THE CUMBERLAND & OHIO RAILROAD COMPANY, submitted to and voted for by a majority of the qualified voters of said county, were as follows, to-wit:

*First*, that the road should pass through or within six hundred yards of the corporate limits of Shelbyville.

*Second*, that the subscription should not be made until it should be made to clearly appear to the county court that said company had secured a *bona fide* subscription to its capital stock sufficient with that to procure the right of way, grade, and execute the masonry of the road from its northern terminus to the Tennessee line.

*Third*, that the stock taken by Shelby County should, as far as necessary, be used in that county in procuring the right of way, in grading, and the necessary masonry for the road-bed.

*Fourth*, that before said subscription should be made by the county court, or the bonds delivered in payment thereof, the president and directors of said company should by an order of its board direct the county court to issue and deliver one hundred thousand dollars of said bonds to the Shelby County Railroad, to be used in Shelby County in extending the Shelby Railroad east of Shelbyville.

In a proceeding to compel the Shelby County Court by mandamus

VOL. VIII.—15

to issue bonds in pursuance of the popular vote of said county on the conditions set forth in the submission: *Held*,

If it be true that the adoption of either of said four conditions, which were mainly intended as safeguards, could prejudicially affect the rights of any citizen of Shelby County, they were nevertheless legal and authorized by the charter, unless rendered illegal by some other cause than that now under consideration; and especially so, as the conditions are consistent with the general object and purposes of the corporation, and not expressly or impliedly inconsistent with any of the provisions of its charter.

The proposition under the fourth condition above was not a double proposition for a subscription by the county for stock in each of the two railroads, but for a single subscription of four hundred thousand dollars stock in the Cumberland & Ohio Railroad Company. Its acceptance involved a pledge to invest one hundred thousand dollars of it in stock in the Shelby Railroad, which it was authorized to do under its charter independent of said condition.

2. A SUBSCRIPTION FOR STOCK WITHOUT LEGISLATIVE AUTHORITY, as a general rule, may be rendered valid by an act of the legislature confirming it. (Pierce on American Railroad Law, 124; City of Bridgeport v. Housatonic Railroad Company, 15 Conn. 475.)

3. COUNTY AND MUNICIPAL SUBSCRIPTIONS FOR STOCK IN RAILROADS affording peculiar local benefits to the people affected by such subscriptions, when made in pursuance of legislative authority, may now be regarded as of unquestionable constitutionality, in view of the numerous and uniform decisions of this court sustaining them.

4. LAW AUTHORIZING THE SUBSCRIPTION MUST BE COMPLIED WITH.— In all essential particulars the provisions of an act authorizing a municipal corporation to subscribe for stock in a railroad company, and to issue its bonds in payment thereof, must be complied with, and if not followed the bonds will be void unless the defect is cured by subsequent legislation. (Pierce on American Railroad Law, 123; Winchester and Mt. Sterling Turnpike Road Co. v. Clark County Court, 3 Metcalfe, 140.)

5. THE EXACT LINE AND PRECISE TERMINAL POINTS OF THE ROAD ARE NOT FIXED BY THE CHARTER of the Cumberland & Ohio Railroad Company, but they are held to be substantially and sufficiently designated by the provisions of the charter quoted in the opinion.

6. MANDAMUS IS THE APPROPRIATE REMEDY in any coercive proceedings against a county court to compel the issue of bonds in pursuance of county subscriptions.

7. JUDGMENT OF THE COUNTY COURT CAN NOT BE QUESTIONED IN A COLLATERAL PROCEEDING.—The correctness of the judgment of the county court, that the conditions of the propositions voted for had

Shelby County Court v. Cumberland & Ohio Railroad Company.

been complied with so far as to authorize the subscription for the stock in the railroad company, can not be questioned in a proceeding in the circuit court to compel the county court by mandamus to issue the bonds of the county.

Z. WHEAT, . . . }
J. C. BECKHAM, . . }          . . . . . . . .          For Appellant,

CITED

Constitution of Kentucky, section 37, article 2.

Civil Code, section 123.

Act of March 15, 1851, to incorporate Shelby R. R. Co., and amendments thereto of March 10, 1854, Feb. 15, 1858, Feb. 3, 1859.

Act of March 17, 1870, in relation to submitting questions of taxation to a vote of the people.

29 Missouri, 318, North Missouri Railroad v. Winkler.

1 Breese, 103, County Commissioners v. Jones.

6 Hammond, 143, State v. Collins.

2 Metcalfe, 73, Maddox, &c. v. Graham & Knox.

9 Howard, 172, Perrine v. Chesapeake & Delaware Canal Co.

13 B. Monroe, 27, Slack, &c. v. Maysville & Lexington Railroad.

27 Illinois, 305, Clarke v. Supervisors of Hancock County.

4 Wallace, 598, Bell v. The Railroad.

18 Barbour, 317, M. & B. Plank-road v. Snedaker.

2 Metcalfe, 222, Phillips v. Covington & Cincinnati Bridge Co.

2 Metcalfe, 323, Fry's executor v. Lexington & Big Sandy R. R.

CALDWELL & HARWOOD, }
BULLOCK & DAVIS, . . . }          . . . . . . .          For Appellee,

CITED

Ms. Opin. Garrard Co. Court v. Ky. Nav. Co. (Rep'd in this vol.)

The Stockton & Versalia R. R. Co. v. The Com. Council City of Stockton, by Sup. Ct. Cal., May 12, 1871.

Civil Code, section 526.

33 New York, 333, Lee Centulx v. Buffalo.

1 Sand. N. Y. Ch. 80, Barry v. Merchants Exchange Company.

4 B. Mon. 97, Nelson County Court v. Washington County Court.

18 B. Monroe, 847, Anderson County Court v. Stone.

5 Bush, 225, Shelby County Court v. Shelby Railroad Company.

3 Clarke 311, McMullin, &c. v. Lee County.

21 Illinois, 373, Fulton County v. Mississippi & Wabash R. R.

14 Ohio St. 472, Fosdick v. Perrybreng.

8 B. Monroe, 648, Second Auditor v. Hardin.

13 B. Monroe, 13, Slack, &c. v. Maysville & Lexington R. R. Co.

11 B. Monroe, 154, Justices Clark Co. v. P. W. & Ky. R. F. Co.

9 B. Monroe, 526, Talbot v. Dent.

13 Rich. (S. C.) 277, *Ex parte* Graham.

15 B. Monroe, 234, McMillen v. Maysville & Lexington R. R. Co.

JUDGE HARDIN DELIVERED THE OPINION OF THE COURT.

This was a proceeding for a *mandamus* to compel the judge of the Shelby County Court to issue and deliver to the Cumberland & Ohio Railroad Company the bonds of that county for the sum of three hundred thousand dollars, in payment of that amount of a subscription to the capital stock of the company of four hundred thousand dollars previously ordered to be made by the county court, upon certain specified conditions, and in conformity with the apparent will of the people of the county, ascertained by a popular vote. The circuit court being of the opinion that said subscription was valid and obligatory, and that the county court in refusing to issue the bonds on the application of the company had transcended its discretion and authority, peremptorily ordered the issual of the bonds of the county to the company for three hundred thousand dollars, and from that mandatory order the judge of the county court prosecutes this appeal.

The Cumberland & Ohio Railroad Company was incorporated by an act of the legislature of this state, approved February 24, 1869, and that act was amended by one approved on the 11th of March, 1870. It will only be necessary to state some of the numerous provisions of said acts in presenting the questions involved by this appeal, which seem to require particular consideration.

Although neither the exact line nor precise terminal points of the road are fixed by the charter, they are substantially, and as we think sufficiently, designated by the following provisions of section 12 of the original act of incorporation: "That the president and directors of said company are hereby vested with all the powers and rights necessary to the con-

struction of a railroad from the Ohio River, through Henry County, Shelby County, Washington County, Nelson County, Marion County, Taylor County, Green County, Barren County, and Allen County, to a point on the boundary line between the states of Kentucky and Tennessee, to be selected by the president and directors, about due north from the town of Murfreesboro, Tenn., with the view of connecting with the southern system of railways converging at Nashville, Tenn. They may connect with the Ohio River by intersecting the Covington extension of the Louisville, Cincinnati & Lexington Railroad at some convenient point in Henry County, Ky., on such terms as may be mutually and lawfully agreed upon between the company hereby incorporated and the said Louisville, Cincinnati & Lexington Railroad Company."

The 15th section of the same act provides, in substance and effect, that any county through which the proposed road may pass is thereby authorized to subscribe stock in the company, in any amount such county may desire; and the county court of any such county is authorized to issue its bonds in such amount as the county court may direct; provided the court shall first submit the question of making the subscription to the qualified voters of the county for determination by an election; and if at such election the majority shall vote in favor of subscribing the stock, it shall be the duty of the county court to make the subscription in the name of the county, and proceed to have the bonds of the county issued therefor.

The Cumberland & Ohio Railroad Company organized under its charter, and thereafter, on the 14th of August, 1869, the County Court of Shelby County, on the motion of the president of the company, entered upon its records an order for submitting to the voters of the county, at an election on the 4th of September, 1869, the question of subscribing on the part of the county to the stock of the road the sum

of four hundred thousand dollars, payable in the interest-bearing bonds of the county, to become due in twenty years. To this proposition, and for submission with it, the court in its order annexed four conditions, which are substantially as follows:

1. That the road should pass through or within six hundred yards of the corporate limits of the town of Shelbyville.

2. That the subscriptions should not be made until it should be made to clearly appear to the county court that said company had secured a *bona fide* subscription to its capital stock sufficient with that to procure the right of way, grade, and execute the masonry of the road from its northern terminus to the Tennessee line.

3. That the stock taken by Shelby County should, as far as necessary, be used in that county in procuring the right of way, in grading, and the necessary masonry for the road-bed.

4. That before said subscription should be made by the county court, or the bonds delivered in payment thereof, the president and directors of said company should by an order of its board direct the county court to issue and deliver one hundred thousand dollars of said bonds to the Shelby Railroad Company, to be used in Shelby County in extending the Shelby Railroad east of Shelbyville.

The election was held upon due notice, and resulted, by a small majority of the votes cast, in favor of the proposition to make the subscription of stock upon the several conditions submitted with it.

Afterward, in March, 1871, the Cumberland & Ohio Railroad Company, having filed its petition in the county court, setting forth that it had complied with the terms and conditions of the propositions submitted and voted upon as aforesaid, and asking that the subscription be made on behalf of the county, the same was heard upon evidence adduced, and thereupon the court adjudged as follows: "And it clearly

appears to the satisfaction of this court that from the evidence exhibited by said president and directors of said company that they have secured a *bona fide* subscription to its capital stock sufficient, with the subscription asked from Shelby County, to procure the right of way, grade, and execute the masonry of said road from its northern terminus, through the state of Kentucky, to the line of the state of Tennessee. It is therefore ordered that the said sum of four hundred thousand dollars, for and on behalf of the county of Shelby, be and the same is hereby subscribed to the capital stock of the Cumberland & Ohio Railroad Company, with the condition that one hundred thousand dollars of said subscription shall be paid to the Shelby Railroad Company, and shall be held by the Cumberland & Ohio Railroad Company as stock in said Shelby Railroad, to be expended by said road as provided in the order submitting the proposition to the voters of Shelby County, and with the further condition that said Cumberland & Ohio Railroad shall run within six hundred yards of the corporate limits of the town of Shelbyville, as they existed on the 4th of September, 1869, and that the money arising from the subscription of Shelby County shall be expended, as far as may be necessary, in Shelby County in securing the right of way, grading, and executing the masonry upon said road."

Subsequently the appellee moved the county court to issue to it three hundred thousand dollars of the bonds of the county in payment of that much of the subscription, which the court refused to do, and hence has arisen this litigation, resulting in the peremptory judgment of the circuit court, now before this court for revision.

Whatever doubts may have existed, or might now be entertained, as to the constitutional validity of county or municipal subscriptions for stock in railroads affording peculiar local benefits to the people affected by such subscriptions,

if the question were a new and unsettled one in this state, such subscriptions, when made in pursuance of legislative authority, may now be regarded as of unquestionable consti-. tutionality, in view of the numerous and uniform decisions of this court sustaining them. And it is equally well settled that if in this case the defendant is liable to any coercive proceeding, the remedy by the writ of *mandamus* is the appropriate one.

But questions of more difficulty are presented with reference to the validity of the order of the county court of August 14, 1869, and the subsequent action of the court in ordering the subscription of stock in accordance with the popular vote. It is certainly true that in all essential particulars the provisions of an act authorizing a municipal corporation to subscribe for stock in a railroad company, and to issue its bonds in payment thereof, must be complied with, and if not followed the bonds will be void, unless the defect is cured by subsequent legislation. (Pierce on American Railroad Law, 123; Winchester and Mount Sterling Turnpike Road Co. v. Clark County Court, 3 Met. 140.) It logically results that if annexing to the proposition voted on conditions which rendered it substantially variant from that which was authorized by the charter, and especially if the conditions were also prejudicial to any part of the people to be burdened by the subscription, it is illegal, and ought not to be enforced. But we are not required to decide as to the legal effects of each of the several conditions on the assumption that they were added to the main proposition submitted without authority of law. The president and directors of the railroad company are not only expressly vested by the 12th section of the act of 1869, *supra*, "with all the powers and rights necessary to the construction" of the road, but the 16th section provides that the company "shall have all the powers and privileges conferred" on the "Louisville & Nashville Railroad Company by the laws of

Kentucky for constructing and operating their said road not herein specified and granted, and not in conflict with the terms of this charter;" and by section 22 of the charter of the Louisville & Nashville Railroad Company, the county courts of counties through which that road passes are expressly authorized to submit to the voters of their counties propositions for subscribing for stock in that corporation, "if by them deemed expedient, in such manner as they may direct and prescribe." And by the 6th section of an act to amend the same charter, approved January 17, 1856, counties, towns, cities, and other corporations are authorized, in express terms, to subscribe for stock in that road, "with such terms and time of payment, conditions annexed, and kind of payment that may be set forth in the subscription."

Giving to the foregoing enactments a fair and reasonable construction, in view of the objects intended to be effected by the reference made in the charter of the Cumberland & Ohio Railroad Company to that of the other corporation, it seems to us that if it be true that the adoption of either of said four conditions, which were obviously mainly intended as safeguards, could prejudicially affect the rights of any citizen of Shelby County, they were nevertheless legal and authorized by the charter, unless rendered illegal by some other cause than that now under consideration, and especially so as the conditions are consistent with the general objects and purposes of the corporation, and not expressly nor impliedly inconsistent with any of the provisions of its charter. This conclusion is fortified by the act of the legislature amending the charter of the Shelby Railroad Company, approved March 11, 1871, which contains this proviso: "That this act shall not be construed so as to interfere with any of the rights or privileges conferred upon the Cumberland & Ohio Railroad Company, nor so as to alter or change the subscription, or the terms thereof, made by Shelby County to the Cumberland &

Ohio Railroad Company." For it is true, at least as a general rule, that even where a municipal corporation has made a subscription without legislative authority to the stock of a railroad company, it may be rendered valid by an act of the legislature confirming it. (Pierce, *supra*, 124; City of Bridgeport v. The Housatonic Railroad Company, 15 Connecticut, 475; Campbell v. City of Kenosha, 5 Wallace, 194.)

But besides the general objection to the action of the county court, in annexing the several conditions to the proposition submitted to the vote of the county as affecting the validity of the subscription, the legality of the vote, and consequently of the subscription, have been particularly questioned in the argument for the appellant, on the alleged ground that the fourth and last of said conditions, in providing in advance for the investment of one hundred thousand dollars of the stock to be taken in the Shelby Railroad Company, was a perversion of the power and authority conferred by the charter, and operated as a bribe for securing the success of each of said enterprises, and was therefore a fraud on the people, which invalidated the subscription; and we have been referred to the cases of the Supervisors of Fulton County v. Mississippi & Wabash Railroad Company (21 Illinois, 338), People *ex rel.*, &c. v. County of Tazwell *et al.* (22 Illinois, 147), and Clark v. Board of Supervisors, &c. (27 Illinois, 305), as authority for this position. Neither of those cases is analogous to this. They each involved a combination of two distinct and independent corporations, seeking aid by a popular vote, which their association together must necessarily have trammeled and constrained, so that persons desiring to vote for one proposition only were liable to be thereby induced to vote for the other. The proposition submitted in this case was not a double one for a subscription by the county for stock in each of the two railroad companies; but for one single subscription of four hundred thousand dollars of stock in the Cumberland &

Ohio road. It is true its acceptance involved a pledge that the appellee would invest one hundred thousand dollars of it in the stock of the Shelby Railroad; but that investment, which may have been alike beneficial to both the appellee and the people of the county, it had a perfect right to make out of its capital stock, whether pledged as a condition of the acceptance of the stock or not; for it was authorized by its charter to acquire stock in other railroads. And as the acquisition of stock or other interests in railroads connecting with its own was within the scope of the powers and privileges secured by its charter for constructing and successfully operating the Cumberland & Ohio Railroad, we are unable to perceive how it could have been either unjust to the voters or tax-payers of the county, or a perversion of the legislative will, to so submit to the people the proposition to take the stock as to compel the appellee, as a condition of its acceptance, to exercise a privilege which it had, in using one hundred thousand dollars of the bonds of the county so as to foster and promote the other railroad enterprise, which seems also to be of great importance to the people of the county.

It is insisted for the appellant that the petition and evidence on which the county court adjudged that the conditions of the proposition voted for had been complied with, so far as to authorize the subscription of stock, did not authorize that conclusion; but whether this be so or not, it is deemed a sufficient answer to the objection that the court acted judicially, and the correctness of its judgment, which remains unreversed, can not be collaterally questioned in this proceeding.

Finally, it is contended that if the subscription was legal and authorized when made, the act of the legislature approved March 17, 1870, declaring it to be unlawful "to submit more than one proposition, direct or indirect, to the voters of a county" at any one election, and repealing previous enactments inconsistent with it, operated retrospectively to invali-

date the subscription. Whatever effect that act might have in a case embraced by it, if the construction we have given to the proposition voted for be correct, it has no application to this case.

Wherefore, no error appearing in the judgment of the circuit court, the same is affirmed.